NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| REGINA LOMAX, on behalf of herself and others similarly situated, | Civil Action No. 13-1945 (SRC) |
| Plaintiff, | |
| v. | OPINION |
| MERACORD LLC, and JOHN DOES 1-5, | |
| Defendants. | |

**CHESLER**, District Judge

  This matter comes before the Court upon the motion filed by Defendant Meracord LLC ("Defendant" or "Meracord") to stay this litigation and compel arbitration or, in the alternative, to dismiss this action without prejudice. Plaintiff Regina Lomax ("Plaintiff" or "Lomax") has opposed the motion. The Court has considered the papers filed by the parties and proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Court will deny Meracord's motion.

  **I.**  **BACKGROUND**

  In June 2010, Plaintiff Lomax, a resident of New Jersey, contracted with a debt settlement company, known as P&E Solutions, to engage that company's services in connection with approximately $14,000 in debt she carried at the time. The Court will refer to this contract for debt settlement services as the "P&E contract." The P&E contract provides that Lomax

1

would make payments "of $263 per month, for a term of 37 months, for the purpose of settling [her] unsecured debts and paying for the costs of [her] Debt Settlement System subscription fee." (P&E contract, ¶ 4.) The P&E contract contains an arbitration clause which reads as follows:

> In the event of any litigation arising out of or relating to this Agreement, all parties, including Client, P&E Solutions agree to resolve the dispute with neutral binding arbitration according to the laws of the State of Florida. Venue for all arbitrations shall be in Broward County.

(Id., ¶ 10.)

Defendant Meracord becomes involved in this transaction as a payment processor. Its role required it to debit Lomax's payments to the P&E debt settlement program from Lomax's bank account, place the money in a trust account, and disburse it to creditors and other parties pursuant to the debt settlement program. To participate in the P&E debt settlement system, Lomax also entered into a separate contract with Meracord, the June 4, 2010 "Signup Agreement," authorizing Meracord (then known as "NoteWorld LLC") to perform these debiting and disbursement services. The Court will refer to Lomax's Signup Agreement for the payment processing services as the "Meracord contract." The Meracord contract does not contain an arbitration clause.

According to the First Amended Complaint (hereinafter, the "Complaint"), from June 2010 to February 2012, Meracord debited the agreed-upon monthly amount from Lomax's bank account, ultimately withdrawing a total of $5,530.56. Lomax alleges that, after contacting the bank that had issued the credit card associated with the debt P&E was supposed to settle, she learned that P&E had not negotiated her credit card debt or made payments in satisfaction of that debt. The Complaint states that in February 2012, she closed her bank account to prevent Meracord from withdrawing additional funds. She alleges that Meracord violated New Jersey

law by acting as a debt adjuster without the required license to do so and by charging fees in excess of the amount permitted by applicable law.

The Complaint, filed in New Jersey state court as a putative class action, asserts three causes of action: violation of the New Jersey Debt Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1, et seq.; violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.; and violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14-18. Defendant removed the action to the Court on the basis that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).[1]

## II.  DISCUSSION

Questions of arbitrability are presumed to be for judicial determination. Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 228 (3d Cir. 2012). The Third Circuit has held that "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980). The Third Circuit recently resolved the question of the appropriate legal standard for deciding a motion to compel arbitration. In Guidotti v. Legal Helpers Debt Resolution, L.L.C., it held that where arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) standard of review should be applied. 716 F.3d 764, 774 (3d Cir. 2013). However, where the complaint does not establish on its face that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward

---

[1] The required minimal diversity of citizenship between the parties exists, as Plaintiff Lomax is a citizen of New Jersey and Defendant Meracord is a Delaware limited liability company, whose principal place of business is in Washington and whose sole member is an individual citizen of Washington. The Court is also satisfied that according to the allegations of the Complaint, the amount in controversy in this putative class action exceeds $5,000,000. See 28 U.S.C. § 1332(d).

with reliable evidence that it did not intend to be bound by an arbitration agreement, the Court of Appeals determined that granting a motion to compel arbitration under a Rule12(b)(6) standard would not be appropriate.  Id.  In those instances, either further factual development is needed or, if the Court is presented with evidence placing the arbitrability question in issue, the issue must be decided under the Rule 56 summary judgment standard.  Id.

In this action, Meracord moves to compel arbitration based on the face of the Complaint and on the contracts expressly referenced in the Complaint. There is no dispute, however, that the contract between the parties to this action, that is, the Meracord contract, does not require arbitration.  The P&E contract, which enrolled Lomax in the debt settlement program underlying this lawsuit, does compel arbitration, but Meracord concedes that it is not a signatory to that contract.  Meracord nevertheless seeks to enforce the arbitration clause contained in the P&E contract on an equitable estoppel theory.

Arbitration agreements may, in certain situations, be enforced by non-parties to the contract through traditional state law principles, including, in relevant part, estoppel.  Arthur Andersen, LLP v. Carlisle, 556 U.S. 624, 631 (2009); EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc., 410 N.J. Super. 453, 463 (App. Div. 2009).   Whether arbitration may be compelled based on equitable estoppel is a fact specific inquiry requiring "analysis of the connection between the claim, the arbitration agreement and the parties." EPIX Holdings, 410 N.J. Super. at 463.  Under New Jersey law, a signatory to an arbitration agreement may be estopped from avoiding arbitration with a non-signatory to that agreement "'when [the] issues to be litigated are intertwined with [the] agreement containing [the] arbitration clause.'" Id. (quoting Bruno v. Mark McGrann Assoc., 388 N.J. Super. 539, 548 (App. Div. 2006) (alterations in quotation).

In <u>EPIX Holdings</u>, the New Jersey Appellative Division reviewed various cases in which both state and federal courts had considered the invocation of a contractual arbitration clause by a non-signatory based on the doctrine of equitable estoppel.  See <u>id.</u> at 466-67.  It noted that "even where the inextricable connectivity was not considered itself dispositive of the issue, the combination of the requisite nexus of the claim to the contract *together with* the integral relationship between the non-signatory and the other contracting party was recognized as a sufficient basis to invoke estoppel." <u>Id.</u> at 466 (emphasis in original).  Examples of the kind of integral relationship which would estop a plaintiff from resisting arbitration of her claims against a non-signatory include situations in which the non-signatory is a parent or successor corporation of the contracting party, the non-signatory is in a principal-agent relationship with the contracting party or the plaintiff has specifically pleaded that the non-signatory has conspired with the signatory.  <u>Id.</u> at 466-67.

The dispositive question, then, is whether Lomax's claims against Meracord are intertwined with the P&E contract and the conduct of signatory P&E, such that principles of fairness and equity estop Lomax from avoiding that contract's arbitration clause.  The Court finds that they are not.  While Lomax's relationship with Meracord may have been initiated by virtue of her decision to enroll in P&E's debt settlement program, the claims she brings against Meracord in this action are distinct from the contract of enrollment, that is, the P&E contract containing the arbitration clause.  Lomax asserts no claim against Meracord pursuant to that contract nor does she allege that Meracord engaged in conduct in violation of obligations which essentially derive from that contract.  The Complaint does recite facts concerning the debt settlement program and the overall arrangement by which Lomax engaged the payment processing services of Meracord.  The Court acknowledges, as Meracord points out in its motion,

that Plaintiff goes as far as asserting that she has not been provided with the debt settlement services she was entitled to receive from "Defendants." Even so, these facts cannot be construed as more than contextual information, and perhaps some poor editing of the document, given that the Complaint does not predicate Lomax's claims to relief on a breach of the P&E contract or seek to recover for the alleged harm she may have sustained as a result of not receiving the debt negotiation and settlement she was promised by P&E.  Rather, her three statutory claims are limited to Meracord's activities as the payment processor, specifically, according to the Complaint, conducting a debt adjustment business without a license, charging unauthorized and/or undisclosed fees for its services and charging fees in excess of the amount permitted by the applicable statute. There is no indication that through artful pleading, Lomax has tried to avoid enforcement of the P&E contract's arbitration clause while at the same time attempting to avail herself of her rights under that contract.  Moreover, Lomax's Complaint does not allege that non-signatory Meracord conspired with P&E to deprive Lomax of the services to which she was entitled under the P&E contract, and Meracord does not contend that it is, or was at the relevant time, in an agency relationship with P&E.[2]  In short, both the legal theories and the factual allegations at issue in this lawsuit are separate and distinct from the P&E contract and, moreover, from the actions of P&E itself.[3]

---

[2] In fact, the Meracord contract expressly disclaims that it is engaged in any joint venture, business association or affiliation with P&E.

[3] Lomax's decision not to join signatory P&E as a defendant would not necessarily preclude Meracord from prevailing on a motion to compel arbitration based on equitable estoppel.  Nevertheless, the Court notes that P&E is not a party to this action nor has Lomax put its performance or the P&E contract at issue. Cf. Bruno, 388 N.J. Super. at 548 (finding that plaintiff homebuyers, whose lawsuit against the home developer was dismissed based on a contractual arbitration clause, were estopped from avoiding arbitration when they filed a subsequent lawsuit against subcontractors with whom they had no contractual relationship because the claims against the subcontractors presented the same factual allegations as against the developer and arose directly out of the homebuyers' contracts with the developer).

The facts of this action are substantially distinct from those considered by another judge of this district court in the case of Guidotti v. Legal Helpers Debt Resolution. There, Chief Judge Simandle held that a plaintiff's claims against two parties who were not signatories to an arbitration agreement were sufficiently intertwined with the agreement, and with the actions of signatories to the agreement, to warrant the conclusion that plaintiff was equitably estopped from resisting arbitration of his claims against the non-signatories. See Guidotti v. Legal Helpers Debt Resolution, L.L.C., No. 11-1219, 2012 U.S. Dist. LEXIS 111382, at *14 (D.N.J. Aug. 7, 2012), reversed on other grounds by 716 F.3d 764 (3d Cir. 2013). He based his conclusion on various factors presented by the plaintiff's claims and the factual allegations on which they were based. First, he noted that the plaintiff had named both signatories and non-signatories as defendants and, moreover, sought relief from both groups under exactly the same legal theories, which included various New Jersey statutory and common law causes of action. Id. at *19. Second, Judge Simandle noted that the plaintiff had pled facts alleging that the non-signatory defendants had conspired with the signatory defendants to commit the acts giving rise to her legal claims, which involved engaging in unlawful debt adjustment and unlicensed practice of law. Id. at *19-20. Third, he observed that, according to the factual allegations of the complaint, the harm the plaintiff claimed to have suffered from the actions of the non-signatory defendants could not be disentangled from the allegedly wrongful actions of the signatory defendants. Id. at *20-21. The Guidotti plaintiff, the court reasoned, had alleged that the non-signatory defendants directed her to the signatory defendants and had sought to recover damages from the non-signatory based, in part, on a signatory's failure to perform under the agreement which included the arbitration clause. Id. In contrast, as this Court discussed above, Lomax bases her statutory claims against

non-signatory Meracord on its own actions, separate and distinct from the conduct of P&E and from any performance required under the arbitration agreement.

The facts here more closely resemble those presented in a recent Ninth Circuit decision affirming a district court's conclusion that equitable estoppel did not provide a basis for a non-signatory payment processor – the same company seeking to compel Lomax to arbitrate – to enforce an arbitration clause against the plaintiff. See Rajagopalan v. NoteWorld, LLC, ---F.3d ---, 2013 WL 2151193, at *3 (9th Cir. May 20, 2013). Rajagopalan v. NoteWorld involved a similar situation to the case at bar, in which the plaintiff had signed up for a debt settlement program, in that case with a company known as First Rate Debt Solutions ("First Rate"), enrolling in the program pursuant to a contract with First Rate which contained an arbitration clause. Id. at *1. NoteWorld was responsible for the payment processing but was not a party to the arbitration agreement between Rajagopalan and First Rate. Id. Rajagopalan canceled his subscription to the debt settlement program, sought a refund of funds that had been withdrawn by NoteWorld from his bank account, and, when certain funds were not returned, filed a class action complaint against NoteWorld, but not First Rate. Id. at *1-2. Rajagopalan's complaint, this Court notes, did assert that NoteWorld engaged in a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act. Id. at *2. The district court denied NoteWorld's motion to stay litigation and compel arbitration, or in the alternative, to dismiss the action, rejecting NoteWorld's arguments that it was a third-party beneficiary of the agreement between First Rate and the plaintiff and that it could enforce the arbitration clause under the theory of equitable estoppel. Id. As to equitable estoppel, the appeals court noted while the Ninth Circuit had never permitted a non-signatory defendant to enforce an arbitration clause based on that doctrine, those jurisdictions that had required that "the subject matter of the dispute be

intertwined with the contract providing for arbitration." Id. at *3 (quotations omitted).  Applying the "intertwined" standard, the Ninth Circuit court found NoteWorld's attempt to invoke the arbitration clause unavailing, reasoning that the plaintiff did not contend breach of the contract containing the arbitration clause, by NoteWorld or any other party, but instead asserted statutory claims which did not arise out of that contract.  Id.  As such, it held that NoteWorld could not compel the plaintiff to arbitrate his claims on the basis of equitable estoppel.  Id.

Likewise, and for the reasons set forth above, this Court finds that this action does not meet the "intertwined" standard articulated in EPIX Holdings that would support Meracord's attempt to enforce an arbitration clause in a contract to which it is not a party.

### III.  CONCLUSION

For the foregoing reasons, the Court will deny Meracord's motion to stay the litigation and compel arbitration or, in the alternative, to dismiss the action.  An appropriate Order with be filed together with this Opinion.

    s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  July 22, 2013